UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON GAS COMPANY d/b/a KEYSPAN ENERGY DELIVERY NEW ENGLAND<br><br>Plaintiff,<br><br>v.<br><br>CENTURY INDEMNITY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 07-10701<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

Plaintiff, Boston Gas Company d/b/a/ KeySpan Energy Delivery New England ("Boston Gas") by its attorneys, for its Complaint against Defendant Century Indemnity Company ("Century Indemnity"), alleges as follows:

## INTRODUCTION

1. This is an action for damages arising out of Century Indemnity's strategy of denying insurance coverage without any reasonable basis or justification, forcing Boston Gas to engage in costly and time-consuming insurance coverage litigation in order to obtain the insurance indemnification for which it had contracted in violation of (i) the duty of good faith and fair dealing and (ii) chapter 93A of the Massachusetts General Laws.

2. Boston Gas has incurred, and will likely continue to incur, substantial remediation costs at 29 sites, including manufactured gas plant and gas holder sites, in Massachusetts pursuant to both Massachusetts General Laws, Chapter 21E, and orders and directives of the Massachusetts Department of Environmental Protection. In addition, Boston Gas faces third-party claims alleging property damage to third-party property adjacent to some of the sites.

3. Boston Gas purchased liability insurance policies from Century Indemnity's predecessors.

4. Boston Gas provided timely notice to Century Indemnity of its insurance claims related to the 29 sites.

5. Century Indemnity refused to investigate Boston Gas' claims thoroughly and withheld from Boston Gas a coverage determination as to those claims.

6. Without the benefit of its insurance coverage, Boston Gas was compelled to defend itself against state and local regulators and third-party claims, incur substantial costs that arose from its liability in these matters and then, initiate litigation against Century Indemnity to recover amounts due under its insurance policies for defense and indemnity.

7. Prior to initiating this insurance coverage litigation, Boston Gas apprised Century of its coverage claims and sought to negotiate a settlement of those claims with Century Indemnity. In response, Century Indemnity not only refused to offer Boston Gas a reasonable settlement, but also refused to participate in good faith settlement negotiations all in violation of its duty of good faith and fair dealing and chapter 93A of the Massachusetts General Laws.

8. After Boston Gas filed its insurance coverage lawsuit, Century Indemnity took steps to prolong the litigation by presenting spurious defenses (many of which were later withdrawn), initiating unnecessary discovery disputes, and filing unnecessary and meritless motions.

9. Following the commencement of the insurance coverage lawsuit, Century Indemnity refused to enter into settlement negotiations, in good faith or otherwise. Ultimately, when directed by the Court to make reasonable efforts to settle this insurance coverage dispute, Century Indemnity made a knowingly low and unacceptable offer to settle on the eve of the trial of the first environmental site.

10. Even after juries have rendered verdicts in favor of Boston Gas in two insurance coverage trials and establishing Century Indemnity's liability to Boston Gas, Century Indemnity has refused to engage in good faith settlement discussions.

11. By prolonging the litigation, Century Indemnity sought to force Boston Gas to incur substantial costs in the underlying cases, and litigation costs in the insurance coverage case, presumably to pressure Boston Gas to settle its claims for far less than it is owed under its insurance policies by depriving Boston Gas of the benefit of the insurance it purchased and paid for.

12. Century Indemnity's wrongful conduct toward Boston Gas is not unique and, on information and belief, is part of Century Indemnity's pattern and practice of forcing other policyholders with complex insurance claims, such as those involving environmental liabilities, to engage in lengthy and time-consuming litigation, in an effort to unduly pressure such policyholders to compromise their claims.

13. As a result of Century Indemnity's wrongful conduct, Boston Gas has incurred substantial costs in underlying actions because it did not have the benefit of its liability insurance and was denied funds that might have been used to settle underlying claims in a more timely and cost effective manner.

14. As a result of Century Indemnity's wrongful conduct, Boston Gas has incurred substantial litigation costs in its coverage action against Century Indemnity.

15. Boston Gas was damaged by Century Indemnity's breach of its contract and its extreme bad faith conduct and therefore seeks monetary damages, including attorneys fees and costs, as well as treble damages.

## THE PARTIES

16. Plaintiff Boston Gas is a corporation organized under the laws of the Commonwealth of Massachusetts, having its principal place of business in Waltham, Massachusetts. Boston Gas is engaged primarily in the business of supplying natural gas to retail customers in Massachusetts.

17. Defendant Century Indemnity is a corporation organized under the laws of the State of Connecticut whose principal place of business is in Philadelphia, Pennsylvania. Century Indemnity is the successor to The Indemnity Insurance Company of North America ("IINA") and The Insurance Company of North America ("INA"). Upon information and belief, Century Indemnity was acquired by ACE INA Holdings, Inc., and is now one of the ACE Group of Insurance Companies known collectively as ACE USA. Century Indemnity is authorized to do business and is doing and transacting business in Massachusetts.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between Boston Gas and Century Indemnity in this matter, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because a substantial part of the events or omissions giving rise to this action occurred in Massachusetts; the property that is the subject of this action is situated in Massachusetts; and Century Indemnity is subject to personal jurisdiction in Massachusetts.

## FACTUAL BACKGROUND

**B.   Century Indemnity's Refusal To Investigate Boston Gas' Claims**

20.    Century Indemnity has embroiled Boston Gas in a drawn-out litigation intended to force Boston Gas to settle its insurance claims for substantially less than it is entitled and to force Boston Gas to forego the benefit of its insurance.

21.    From 1951 to 1969 Boston Gas paid substantial premiums for first-layer excess general liability policies from IINA or INA (the "Boston Gas Policies").  The Boston Gas Policies require Century Indemnity to indemnify Boston Gas for defense costs and all sums that Boston Gas becomes legally obligated to pay as a result of property damage, as long as any part of the damage for which Boston Gas is liable occurred during the policy period.

22.    Boston Gas has incurred substantial remediation costs at 29 sites, including manufactured gas plant and gas holder sites in Massachusetts (collectively, the "MGP Sites," or, individually, "MGP Site").  Boston Gas has conducted, or will conduct, investigations and has conducted, or may conduct, remedial and cleanup activities at the sites pursuant to both Massachusetts General Laws, chapter 21E, and also the orders and directives of the Massachusetts Department of Environmental Protection.

23.    Boston Gas also has received third-party claims alleging property damage to third-party property adjacent to some of the MGP Sites.

24.    Boston Gas has sought indemnification from Century Indemnity for remediation costs, defense costs, and liability related to the 29 MGP Sites (collectively, the "MGP Claims").

25.    Boston Gas provided Century Indemnity with timely notice of and relevant information related to the MGP Claims.

26.    Century Indemnity withheld payment from Boston Gas for the MGP Claims.

27. Century Indemnity's failure to provide coverage for the MGP Claims constitutes breach of the Boston Gas Policies.

28. Century Indemnity refused adequately to investigate or to evaluate the merits of the MGP Claims. Century Indemnity neither adopted nor implemented any reasonable standards for promptly handling or investigating the MGP Claims. To the extent that Century Indemnity performed any investigation of any MGP Claim, Century Indemnity prematurely terminated the investigation upon uncovering information that confirmed that it was obligated to provide coverage for the MGP Claims.

29. Before Boston Gas filed its insurance coverage lawsuit, Century Indemnity did not provide Boston Gas with a decision to deny coverage. Century Indemnity deliberately avoided disclosing a coverage decision.

30. Century Indemnity engaged in a strategy of evasiveness and obstructionism that began as soon as it learned of the MGP Claims.

31. Because of Century Indemnity's wrongful refusal to honor its obligations under the Boston Gas Policies, Boston Gas was forced to pay for environmental liabilities, without the benefit of the Boston Gas Policies.

**C.     The Coverage Action**

32. Deprived of the benefit of the Boston Gas Policies, and in the absence of a reasonable and fair offer to settle the MGP Claims, Boston Gas was compelled to institute litigation against Century Indemnity to recover amounts due under the Boston Gas Policies.

33. In 2002, Boston Gas brought an action to recover for the MGP Claims under the Boston Gas Policies against Century Indemnity in the United States District Court of the District of Massachusetts (the "Coverage Action").

34. Century Indemnity filed an answer in response to Boston Gas' complaint in the Coverage Action, denying all liability to Boston Gas.

35. Century Indemnity asserted in its answer a series of specious and generic defenses that neither took into account the merits of the MGP Claims nor the applicability of the defenses to the MGP Claims.

36. Century Indemnity embarked on a pattern of delay intended to entangle Boston Gas in costly and time-consuming litigation, seeking to pressure Boston Gas to settle the MGP Claims for far less than the amounts due under the Boston Gas Policies.

37. Century Indemnity improperly attempted to use discovery as a means to justify *post hoc* its refusal to provide coverage for the MGP Claims.  Even after it received additional information through discovery that further confirmed that the MGP Claims were covered, Century Indemnity refused to reconsider its denial of coverage for the MGP Claims, instead opting to unduly prolong the litigation with Boston Gas.

### D.    Century Indemnity's Refusal To Negotiate Settlement In Good Faith

38. After more than two years of litigation, Century Indemnity requested that Boston Gas provide it with an offer to settle the Coverage Action.

39. In April 2004, in response to this request, Boston Gas offered to settle its claims with respect to all 29 MGP Sites in the amount of $41.9 million.

40. Century Indemnity refused to accept Boston Gas' settlement offer and refused to negotiate with Boston Gas.  Century Indemnity provided no explanation for its failure to negotiate with Boston Gas.

41. A year later, Century Indemnity agreed to participate in a meeting at which Boston Gas was given the opportunity to explain its April 2004 settlement offer.  Boston Gas made a thorough presentation of the basis of its settlement demand.

42. Century Indemnity again refused to accept Boston Gas's settlement proposal or to offer Boston Gas a settlement proposal of its own.

43. Century Indemnity continued to delay and detour Boston Gas, compelling it to incur additional litigation costs, in an effort for Century Indemnity to obtain additional settlement leverage over Boston Gas.

### E. Century Indemnity's "Low Ball" Settlement Offer

44. The first of the 29 MGP Sites scheduled for trial in the Coverage Action was the Everett MGP Site.

45. On November 2, 2005, shortly before the trial of the Everett MGP Site, the Court directed Century Indemnity to respond to Boston Gas's settlement offer.

46. Century Indemnity defied the Court's order by deliberately making an unreasonably low settlement offer that it knew Boston Gas would find inadequate and totally unacceptable.

47. Century Indemnity offered to settle Boston Gas' claims relating to all 29 MGP Sites for merely $750,000, which amounts to roughly $25,000 per MGP Site.

48. Century was well aware, or should have known, that the cost of the three week jury trial, with multiple expert witnesses, relating to the Everett MGP Site would alone cost much more than $750,000.

### F. Everett Trial And Verdict In Favor Of Boston Gas

49. Century Indemnity's "low ball" settlement offer was substantially less than the jury verdict returned in favor of Boston Gas after the trial of the Everett MGP Site.

50. The trial of the Everett MGP Site lasted three weeks.

51. Immediately prior to the Everett trial, Century Indemnity's counsel represented to Boston Gas' counsel that following the Everett MGP Site trial, win, lose, or draw, Century Indemnity would be prepared to settle the Boston Gas MGP claims.

52. Century Indemnity's representation was false. Century Indemnity made no offer to settle the Boston Gas MGP Claims after the Everett trial.

53. Boston Gas prevailed at the trial of the Everett MGP Site. The jury returned a verdict in favor of Boston Gas with respect to the Everett MGP Site, awarding Boston Gas $6,127,327.90, more than eight times Century's offer for all 29 sites.

54. The Court entered a declaratory judgment in favor of Boston Gas requiring Century Indemnity to continue to reimburse Boston Gas for future remediation costs and expenses Boston Gas incurs in connection with the Everett MGP Site.

55. After the trial of the Everett MGP Site, Boston Gas offered to settle its claims against Century Indemnity relating to the Everett MGP Site alone.

56. Despite the verdict in the Coverage Action against Century Indemnity and, despite its own counsel's representations that it would enter into settlement negotiations, Century Indemnity refused Boston Gas' settlement offer, making no effort to settle or otherwise resolve the insurance coverage.

57. The settlement offer that Century Indemnity offered to Boston Gas prior to the trial of the Everett MGP Site was wholly and manifestly inadequate. Despite the verdict following the trial, Century Indemnity refused to increase its "low ball" settlement offer of $750,000.

58. Century Indemnity did not offer to pay even the Everett MGP Claim.

### G. Century Indemnity's Post-Verdict Conduct

59. Throughout the Coverage Action, Century Indemnity engaged in litigation tactics, such as pursuing shifting and spurious defenses and initiating discovery disputes, in order to prolong the litigation.

60. Century Indemnity's tactics included delaying depositions, having experts change opinions, and seeking numerous postponements of the trial date, thereby further denying Boston Gas timely access to its insurance coverage.

61. After the verdict in the trial of the Everett MGP Site, Century Indemnity continued to file unnecessary and unreasoned post-verdict motions in an effort to prolong the litigation.

62. Century Indemnity continued to shun settlement negotiations with Boston Gas. After delaying Boston Gas' request for mediation of Boston Gas' claims until a second site trial in the Coverage Action neared, Century Indemnity finally agreed to meet to discuss settlement with Boston Gas on January 19, 2007. During that meeting, Century Indemnity offered to settle all 29 of Boston Gas' claims for $4.4 million, less than half of the amount of the jury verdict in the Everett site trial, with prejudgment interest.

### H. Commercial Point Trial And Verdict In Favor Of Boston Gas

63. As a result of Century Indemnity's knowing and willful litigation conduct, Boston Gas was forced to continue to litigate and to proceed to trial in the Coverage Action on yet another MGP Site.

64. The second of the 29 MGP Sites scheduled for trial in the Coverage Action was the Commercial Point MGP Site.

65. The Commercial Point MGP Site trial commenced on February 26, 2007.

66. Century Indemnity had conducted a preliminary investigation of that site, then fired its consultant after the consultant's report included statements that would support the position that the claim was covered.

67. Century Indemnity retained an expert to testify at trial whose expert report contained statements that supported the position that the remediation costs at the Commercial Point MGP Site were covered. Prior to the trial of the Commercial Point MGP Site, however, Century Indemnity fired the expert.

68. The trial of the Commercial Point MGP Site lasted nearly two weeks.

69. Boston Gas prevailed on most of its claims at the trial of the Commercial Point MGP Site. The jury returned a verdict in favor of Boston Gas with respect to the Commercial Point MGP Site, awarding Boston Gas $1,699,145.79, more than two times Century's initial offer for all 29 sites.

70. Century Indemnity did not offer to pay the Commercial Point claim. Instead, just before, and after that trial, counsel for Century Indemnity repeatedly threatened sanctions, and demanded that Boston Gas promptly provided discovery with respect to each of the remaining MGP Sites.

71. As a result of Century Indemnity's knowing and willful litigation conduct, Boston Gas is being forced to continue to litigate and to proceed to trial in the Coverage Action on the remaining MGP Sites, and, in the process, to expend substantial sums in the form of attorneys fees and costs, all the while being deprived of the benefits of insurance it purchased under the Boston Gas Policies.

I. **Century Indemnity's Pattern And Practice Of Forcing Policyholders To Litigate**

72. On information and belief, Century Indemnity has a pattern and practice of forcing policyholders with complex insurance claims, such as those involving asbestos or environmental liabilities, to engage in costly and time consuming litigation.

73. On information and belief, Century Indemnity willfully and knowingly employs this pattern and practice of forcing policyholders with complex claims to litigate in order to gain undue leverage over such policyholders and to pressure them to settle their claims for substantially less than they are owed under their insurance policies.

74. On information and belief, Century Indemnity's pattern and practice of forcing policyholders with complex claims to litigate includes, for example, refusing to investigate such claims, withholding payment on such claims without basis, forcing policyholders to litigate against it to recover insurance proceeds, and stringing out the litigation process.

75. On information and belief, Century Indemnity's pattern and practice of forcing policyholders to litigate compels policyholders with complex claims to incur substantial litigation costs over an extended period of time. Such litigation costs significantly reduce the value of claims in the eyes of policyholders and create a powerful incentive to settle the claims for far less than the amounts due under their insurance policies.

76. On information and belief, Century Indemnity's pattern and practice of forcing policyholders to litigate compels policyholders with complex insurance claims to choose among several unappealing options: (1) engage in costly and time consuming litigation with Century Indemnity, (2) settle with Century Indemnity for far less than the policyholder is owed, or (3) forego seeking recovering insurance proceeds from Century Indemnity altogether.

77. Century Indemnity has a strong financial incentive to withhold payment on complex insurance claims as long as possible, because, in addition to avoiding paying the

substantial sums such claims typically involve, Century Indemnity continues to earn investment income on the policyholders' premiums and reserves during litigation with policyholders, thus providing it with an additional financial incentive to prolong litigation with policyholders and to delay paying the claims.

78. On information and belief, Century Indemnity deliberately applies its pattern and practice of forcing policyholders to litigate complex claims without regard to its contractual obligation to pay such claims.

79. On information and belief, upon the commencement of litigation with a policyholder, Century Indemnity uses litigation as an excuse to raise numerous specious, insubstantial, and generic defenses and to employ tactics that unnecessarily prolong the litigation.

80. On information and belief, Century Indemnity's pattern and practice of forcing policyholders to litigate aims to discourage policyholders from seeking to enforce their rights under their insurance policies.

81. As a result of Century Indemnity's pattern and practice of forcing policyholders to litigate, Boston Gas has been compelled to spend substantial sums in the form of attorneys' fees and costs, which, in turn, have eroded the value of its insurance under the Boston Gas Policies.

82. Century Indemnity's specific conduct of forcing Boston Gas to litigate to obtain the benefits of the insurance policies it purchased, and Century Indemnity's pattern and practice of forcing policyholders to litigate, constitute unfair and deceptive trade practices.

### FIRST CLAIM FOR RELIEF

83. Boston Gas repeats and realleges the allegations set forth in paragraphs 1 through 82, as if fully set forth herein.

84. The Boston Gas Policies impose upon Century Indemnity a duty of good faith and fair dealing towards Boston Gas.

85. In addition to breaching the Boston Gas Policies, Century Indemnity has breached the duty of good faith and fair dealing, including, without limitation, the following:

    a. Century Indemnity failed to acknowledge and act reasonably promptly upon communications with respect to Boston Gas' claims arising under the Boston Gas Policies;

    b. Century Indemnity failed to affirm or deny coverage of Boston Gas' claims within a reasonable time after the claims were made;

    c. Century Indemnity failed to effectuate prompt, fair and equitable settlement of Boston Gas' claims after Boston Gas' liability had become reasonably clear;

    d. Century Indemnity refused to pay claims while it did not conduct a reasonable investigation based upon all available information;

    e. Century Indemnity compelled Boston Gas to institute litigation to recover amounts due under the Boston Gas Policies;

    f. Century Indemnity prolonged the litigation in a lengthy pattern of delay and detour, with the intent of pressuring Boston Gas to compromise the MGP Claims for substantially less than it was owed under the Boston Gas Policies.

86. Through these practices, Century Indemnity has acted in bad faith to deprive Boston Gas of the benefits of the Boston Gas Policies and to gain unfair leverage over Boston Gas in an effort to secure undue economic advantage.

87. As a direct and proximate result of Century Indemnity's breach of the duty of good faith and fair dealing, Boston Gas has suffered, and continues to suffer, the loss of money or property and that loss was a foreseeable result of said conduct.

**SECOND CLAIM FOR RELIEF**

88. Boston Gas repeats and realleges the allegations set forth in paragraphs 1 through 87, as if fully set forth herein.

89. Boston Gas and Century Indemnity are persons engaged in the conduct of trade and commerce within the meaning of Massachusetts General Laws, chapter 93A, sections 1 and 11.

90. Century Indemnity has engaged in conduct that constitutes unfair and deceptive acts or practices in violation of Massachusetts General Laws, chapter 93A, sections 2 and 11, and chapter 176D.

91. Century Indemnity's failure to investigate the MGP Claims and reach a coverage determination prior to this litigation was unreasonable.

92. Century Indemnity's unreasonable refusal to provide a determination as to insurance coverage caused Boston Gas to spend its own money on defense and cleanup costs related to the MGP Sites.

93. Century Indemnity's failure to reach a coverage determination prior to this litigation, years after Boston Gas first provided notice of claims related to the MGP Sites, constitutes an unfair trade practice.

94. Century Indemnity has placed it own economic interests before those of its policyholder in breach of its duties to Boston Gas.

95. Century Indemnity has engaged in unfair acts and practices, including, without limitation, the following:

> a. Century Indemnity failed to acknowledge and act reasonably promptly upon communications with respect to Boston Gas' claims arising under the Boston Gas Policies;
>
> b. Century Indemnity failed to affirm or deny coverage of Boston Gas' claims within a reasonable time after the claims were made;
>
> c. Century Indemnity failed to effectuate prompt, fair and equitable settlement of Boston Gas' claims after Boston Gas' liability had become reasonably clear;

   d. Century Indemnity failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   e. Century Indemnity refused to pay claims while it did not conduct a reasonable investigation based upon all available information;

   f. Century Indemnity compelled Boston Gas to institute litigation to recover amounts due under the Boston Gas Policies by offering substantially less than the amounts ultimately recovered in actions brought by Boston Gas.

   g. Century Indemnity prolonged the litigation in a lengthy pattern of delay and detour, with the intent of pressuring Boston Gas to compromise the MGP Claims for substantially less than it was owed under the Boston Gas Policies.

96. Century Indemnity's unfair and deceptive acts or practices were all undertaken in a concerted attempt to avoid its liabilities under the Boston Gas Policies.

97. The actions constituting the unfair and deceptive act or practices occurred primarily and substantially in the Commonwealth of Massachusetts.

98. Century Indemnity acted willfully or knowingly in its actions in violation of Massachusetts General Laws, chapter 93A, sections 2 and 11, and chapter 176D.

99. As a proximate result of Century Indemnity's unfair and deceptive acts or practices, Boston Gas has suffered, and continues to suffer, the loss of money or property and that loss was a foreseeable result of said conduct.

100. Because Boston Gas has been harmed as the proximate result of Century Indemnity's willful unfair or deceptive acts or practices, Boston Gas is entitled to three times its damages and attorneys' fees and costs in the Coverage Action, including its attorney's fees and costs incurred in this action.

WHEREFORE, Boston Gas requests a judgment against Century Indemnity as follows:

(a) for compensatory, consequential, and three times actual damages in an amount to be determined at trial, as well as three times any judgments secured by Boston Gas on the MGP Claims, including attorneys fees and costs;

(b) for Boston Gas' reasonable attorneys' fees, interest, costs and the expenses of all insurance coverage actions its has to prosecute to obtain the insurance coverage it purchased and for the attorneys' fees, costs, and expenses of this action; and

(c) for such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

**BOSTON GAS DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

BOSTON GAS COMPANY D/B/A KEYSPAN ENERGY DELIVERY NEW ENGLAND

By its attorneys,

/s/ Jonathan M. Ettinger
Martin C. Pentz (BBO#394050)
Jonathan M. Ettinger (BBO#552136)
Foley Hoag LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600
(617) 832-1196

Of Counsel:

David L. Elkind
John A. Gibbons
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
(202) 420-2200

Dated:  April 11, 2007