**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BOSTON GAS COMPANY d/b/a KEYSPAN ENERGY DELIVERY NEW ENGLAND,<br><br>Plaintiff,<br><br>v.<br><br>CENTURY INDEMNITY COMPANY,<br><br>Defendant. | Civil Action No: 07-10701RWZ |

**CENTURY INDEMNITY COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

David B. Chaffin
**HARE & CHAFFIN**
160 Federal Street, Floor 23
Boston, MA 02110-1700
(617) 330-5000

Of counsel:

Guy A. Cellucci
Patricia B. Santelle
Shane R. Heskin
**WHITE AND WILLIAMS LLP**
1800 One Liberty Place
Philadelphia, PA 19103-7395
(215) 864-7000

**Attorneys for Defendant,
Century Indemnity Company**

Dated: May 11, 2007

Defendant Century Indemnity Company ("Century"), respectfully, submits this memorandum of law in support of its Motion to Dismiss the Complaint of Plaintiff Boston Gas Company ("Boston Gas").

## PRELIMINARY STATEMENT

Five years ago, in 2002, Boston Gas commenced suit in this Court seeking a declaration that Century is required to indemnify it for 100% of all costs incurred and to be incurred in the cleanup of various sites allegedly contaminated by the manufactured gas plant ("MGP") operations of Boston Gas and/or its predecessors (the "Coverage Action"). In filing its claim for declaratory relief, Boston Gas did not assert any extra-contractual (*i.e.*, "bad faith") claims against Century. In 2004, nearly two years after filing the Coverage Action, Boston Gas requested leave to amend the Complaint seeking to add a claim for "bad faith." Century opposed the request on the grounds that, among other things, the proposed Amended Complaint was futile, untimely and prejudicial. The Court agreed with Century and denied Boston Gas' request to amend.

Now, in an effort to circumvent this Court's prior ruling, Boston Gas has filed this separate action, which again seeks purported damages for Century's alleged "bad faith" in the course of handling and litigating Boston Gas' coverage claim. As set forth in detail below, the allegations relied upon by Boston Gas in this action are virtually (and in many instances, exactly) identical to the allegations it previously made in the underlying Coverage Action. The only substantive difference between the two complaints is that the new Complaint now contains allegations concerning Century's conduct during the course of litigating the Coverage Action.

The law in the First Circuit could not be more clear. Under Porn v. National Grange Mut. Ins. Co., 93 F.3d 31 (1st Cir. 1996), a policyholder may not split its claim for coverage and its

claim for "bad faith" into two separate actions, as both claims arise from the same transaction (namely, the insurer's alleged refusal to pay). This is true even where the policyholder seeks to support its "bad faith" claim with allegations of the insurer's conduct during the course of the coverage litigation. Accordingly, Century respectfully requests that the Court deny Boston Gas' "end run" attempt around this Court's prior Order by dismissing its Complaint with prejudice.[1]

## STATEMENT OF FACTS

In 2002, Boston Gas initiated the Coverage Action, which, as noted above, seeks a declaration that Century is jointly and severally liable for all of the environmental investigation and remediation costs Boston Gas allegedly has incurred and will incur at twenty-eight separate former manufactured gas plant and gas holder sites and one former smelter facility. That case, which remains pending before Your Honor, bears the docket number 02-12062RWZ. In the course of the Coverage Action, Boston Gas amended its Complaint twice. Significantly, neither the original Complaint nor the two Amended Complaints contained a claim that Century violated the duty of good faith and fair dealing or chapter 93A of the Massachusetts General Laws.

In 2004, nearly two years after filing the Coverage Action and three months after filing a motion for summary judgment, Boston Gas sought leave to amend its Complaint a third time. The proposed Amended Complaint, like Boston Gas' Complaint in this separate action, contained claims against Century for the alleged violation of the duty of good faith and fair dealing and chapter 93A of the Massachusetts General Laws. Century opposed Boston Gas' request to amend on the primary basis that amending the Complaint to assert "bad faith" would be substantively and factually "futile." Indeed, in order to amend its Complaint after well over a year's worth of discovery had already been taken, Boston Gas was required to demonstrate that

---

[1] Although Century strongly disagrees with the inflammatory allegations made by Boston Gas, neither the Court nor Century needs to address the "merits" of those allegations on this motion to dismiss.

the proposed amendments were "supported by substantial and convincing evidence."[2]  In opposition, Century demonstrated that Boston Gas did not, and could not, meet its evidentiary burden based on both the legal and factual record.  Century also opposed Boston Gas' untimely motion to amend on the basis that Boston Gas was well aware of the purported facts giving rise to the alleged "bad faith" claims for years, and its delay in adding those claims to the Coverage Action amounted to impermissible gamesmanship that worked to Century's prejudice.  The Court agreed with Century and denied Boston Gas' request to include these claims in the Coverage Action.[3]

Nevertheless, Boston Gas has now filed the instant action, which again seeks damages for Century's alleged violation of the duty of good faith and fair dealing and chapter 93A of the Massachusetts General Laws.  As the following chart demonstrates, there is significant overlap between the allegations in this action and those that the Court previously prohibited Boston Gas from asserting in the Coverage Action:

| Third-Amended Complaint in Coverage Action | Complaint in this Action |
| --- | --- |
| "Century Indemnity's failure to investigate the MGP Claims and reach a coverage determination prior to this litigation was unreasonable." ¶ 37. | "Century Indemnity's failure to investigate the MGP Site claims and reach a coverage determination prior to this litigation was unreasonable." ¶ 91. |
| "Century Indemnity's unreasonable refusal to provide a determination as to insurance coverage caused Boston Gas to spend its own money on defense and cleanup costs related to the MGP Sites." ¶ 38. | "Century Indemnity's unreasonable refusal to provide a determination as to insurance coverage caused Boston Gas to spend its own money on defense and cleanup costs related to the MGP Sites." ¶ 92. |
| "Century Indemnity's failure to reach a coverage determination prior to this litigation, years after Boston Gas first provided notice claims related to the MGP Sites, constitutes an | "Century Indemnity's failure to reach a coverage determination prior to this litigation, years after Boston Gas first provided notice of claims related to the MGP Sites, constitutes an |

---

[2] Century Opp. at 2 (Pacer #179) (citing Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994) (moving party required to show that the proposed amendments are "supported by substantial and convincing evidence")).
[3] *See* Jan. 21, 2005 Order, annexed hereto as Ex. A.

| | |
|---|---|
| unfair trade practice." ¶ 39. | unfair trade practice." ¶ 93. |
| "Century Indemnity failed to acknowledge and act reasonably promptly upon communications with respect to Boston Gas' claims arising under the Boston Gas Policies" ¶ 40a. | "Century Indemnity failed to acknowledge and act reasonably promptly upon communications with respect to Boston Gas' claims arising under the Boston Gas Policies." ¶¶ 85a, 95a. |
| "Century Indemnity failed to affirm or deny coverage of Boston Gas' claims within a reasonable time after the claims were made" ¶ 40b. | "Century Indemnity failed to affirm or deny coverage of Boston Gas' claims within a reasonable time after the claims were made" ¶¶ 85b, 95b. |
| "Century Indemnity failed to effectuate prompt, fair and equitable settlement of Boston Gas' claims after Boston Gas' liability had become reasonably clear" ¶ 40c. | "Century Indemnity failed to effectuate prompt, fair and equitable settlement of Boston Gas' claims after Boston Gas' liability had become reasonably clear" ¶¶ 85c, 95c. |
| "Century Indemnity failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" ¶ 40d. | "Century Indemnity failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" ¶ 95d. |
| "Century Indemnity refused to pay claims without conducting a reasonable investigation based upon all available information" ¶ 40e. | "Century Indemnity refused to pay claims while it did not conduct a reasonable investigation based upon all available information" ¶¶ 85d, 95e. |
| "Century Indemnity compelled Boston Gas to institute litigation to recover amounts due under the Boston Gas Policies" ¶ 40f | "Century Indemnity compelled Boston Gas to institute litigation to recover amounts due under the Boston Gas Policies" ¶ 85e |

The only substantive difference between the two complaints is that Boston Gas has now added allegations concerning Century's conduct during the course of the Coverage Action and related settlement negotiations.

## ARGUMENT

**I.  Standard**

When evaluating a motion to dismiss for failure to state a claim on which relief can be granted, the court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003). Those facts "may be derived from the complaint, whatever documents are either annexed to it or fairly incorporated into it, and any relevant matters that are susceptible to judicial notice." *Redondo-Borges v. U.S. Dept. of Housing and Urban*

4

*Development*, 421 F.3d 1, 5 (1st Cir. 2005). Nevertheless, the court does not have to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

All of the facts necessary to determine this motion are either contained in the Complaint or are appropriate for judicial notice, as they come directly from the docket of the Coverage Action (specifically, Boston Gas' proposed Third-Amended Complaint and the Court's Order denying Boston Gas' motion for leave to file the Third-Amended Complaint). It is also well settled that "an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." *Banco Santander de P.R. v. Lopez-Stubbe*, 324 F.3d 12, 16 (1st Cir. 2003) (citations omitted). Thus, Century may properly move to dismiss Boston Gas' complaint for failure to state a claim based on the well-settled doctrine against "claim splitting." The First Circuit has also recognized that "a court may look to matters of public record in deciding a Rule 12(b)(6) motion." *Id.* at 16-17 (internal quotation marks and citation omitted). Here, although the Court's prior Order is a matter outside Boston Gas' complaint, it also is a matter of public record. Therefore, in considering its prior Order, the Court would not be required to treat Century's motion as a motion for summary judgment.

As set forth below, even taking all of Boston Gas' allegations as true, the claims in the Complaint arise from the same transaction as the claims Boston Gas presented in the Coverage Action. Therefore, the Complaint is barred by the rule against "claim splitting," and should be dismissed with prejudice.

**II.     The Doctrine Against Claim Splitting Precludes Boston Gas From Bringing This Action.**

The doctrine against "claim splitting," which is well recognized in this Circuit, "requires a litigant to assert all his various legal theories and factually related allegations the first time he

5

brings suit." *Rose v. Town of Harwich*, 778 F.2d 77, 79 (1st Cir. 1985).  In defining a cause of action with respect to *res judicata* (a doctrine closely related to "claim splitting"),[4] the First Circuit has adopted the "transactional" approach set forth in the Restatement (Second) of Judgments.  *See Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996).  The Restatement defines the scope of a cause of action in a section titled, "Dimensions of 'Claim' for Purposes of Merger or Bar – General Rule Concerning 'Splitting'":

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

RESTATEMENT (SECOND) JUDGMENTS § 24.  The Restatement goes on to provide:

> The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) ***To seek remedies or forms of relief not demanded in the first action***

*Id.* § 25 (emphasis supplied).

In this case, Boston Gas seeks to recover for Century's alleged "bad faith" in handling the underlying environmental claims and its conduct of the ensuing Coverage Action.  As discussed in detail below, however, controlling First Circuit precedent makes it clear that a policyholder may not split its "bad faith" claim and its coverage claim into two separate actions.

---

[4] *See, e.g.*, *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 329 F. Supp. 2d 574, 579 (D.Md. 2004) ("Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action . . . In a claim splitting case, as with the traditional *res judicata* analysis, the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim.") (citations omitted).

In *National Grange*, *supra*, the policyholder submitted a claim to his uninsured motorist insurer. The insurer denied the claim, and the policyholder sued for breach of contract. The policyholder won the coverage case, and subsequently brought another action seeking damages for "bad faith." The insurer moved for summary judgment on the grounds that the "bad faith" claim arose from the same transaction as the coverage claim, and therefore could not be brought as a separate action. The trial court agreed, and the First Circuit affirmed. In reaching its decision, the First Circuit performed a detailed analysis under the Restatement's three factors: (1) whether the facts are related in time, space, origin, or motivation; (2) whether they form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations. *See* RESTATEMENT (SECOND) JUDGMENTS § 24(2).

With respect to the first factor, while the policyholder attempted to characterize the claims as arising out of two separate transactions (namely, the breach of contract claim arose from the underlying car accident, and the "bad faith" claim arose from the insurer's handling of the claim), the First Circuit found that the policyholder's definition of the transaction was "artificially narrow." *National Grange*, 93 F.3d at 35. Instead, the First Circuit agreed with the majority of courts that both the contract claim and the "bad faith" claim arose from the insurer's refusal to pay. *Id.* at 35 and 35 n.3. While acknowledging that certain underlying facts would "likely receive more emphasis" in proving the contract claim as opposed to the "bad faith" claim, the First Circuit stated:

> the Restatement makes clear that merely because two claims depend on different shadings of the facts or emphasize different elements of the facts, we should not color our perception of the transaction underlying them, creating multiple transactions where only one transaction exists.

*Id.* at 35.

In light of the overlapping facts applicable to both claims, the First Circuit concluded that the second Restatement factor (convenient trial unit) was satisfied as well. While the policyholder argued that the evidence relating to the "bad faith" claim could act to prejudice the insurer's defense of the contract claim, and therefore the two claims were not a convenient trial unit, the court said this problem could be addressed simply by bifurcation, which would allow "the evidence common to both claims, which was considerable, [to be] presented at once and not in separate lawsuits commenced at a distance of months or years." *Id.* at 36.

The First Circuit's reasoning with respect to the last Restatement factor, the parties' expectations, essentially is identical to the circumstances presented in this case:

> When he brought his contract suit in November 1993, Porn knew the facts necessary for bringing a bad-faith claim. He knew that National Grange had refused to pay; he knew its alleged reasons for so refusing; and he knew the extent of the delay in payment attributable to the refusal. Therefore, because the two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together.

*Id.* at 37. Here, Boston Gas was well aware of the facts necessary to bring its "bad faith" claim prior to filing the Coverage Action. Significantly, all nine of the allegations listed above relate to alleged conduct by Century prior to even filing the original Coverage Action. *See*, *e.g.*, Proposed Third-Amended Complaint at ¶ 37; Complaint at ¶ 91 ("Century Indemnity's failure to investigate the MGP Site claims and reach a coverage determination prior to this litigation was unreasonable."). Indeed, Century stressed these very points at length in its prior opposition to Boston Gas' motion for leave to amend.

Moreover, the First Circuit in *National Grange* rejected the policyholder's argument that its "bad faith" action was based, in part, on the insurer's conduct during the course of the litigation of the contract claim. First, the Court stated that it was likely the trial would have been bifurcated, in which case the contract phase would have been completed before the "bad faith"

8

phase would proceed, so the policyholder would have been free to use evidence of the insurer's conduct in litigating the contract claim as part of the "bad faith" trial.  Second, the court found that even if the matter were not bifurcated, the policyholder was aware of the vast majority of information to support his "bad faith" claim prior to instituting the contract litigation.  Therefore, the First Circuit concluded that "Porn had ample opportunity to litigate the bad-faith claim therein [citation omitted], and his asserted inability to present evidence of National Grange's litigation conduct as additional support for his bad-faith claim does not present an unusual hardship."  *Id.* at 38.

As noted above, the only substantive difference between the Complaint in the instant action and the proposed Third-Amended Complaint in the Coverage Action is that the instant Complaint also alleges "bad faith" with respect to Century's conduct during the course of the Coverage Action and related settlement negotiations.  Like the policyholder in *National Grange*, however, Boston Gas was well aware of the majority of the conduct it relies upon to support its "bad faith" claim at the time it filed the Coverage Action.  Accordingly, even though Boston Gas now alleges "bad faith" in connection with Century's conduct during the Coverage Action, under the First Circuit's ruling, that is not a sufficient reason to allow Boston Gas to circumvent this Court's prior ruling denying it permission to add the "bad faith" claim to the Coverage Action and split its claim by way of the instant action.

Indeed, federal courts have taken a dim view of litigants who attempt to do exactly what Boston Gas has done here (namely, make an "end run" around an adverse ruling on a motion to amend by bringing an entirely separate lawsuit).  For example, in *Sensormatic Security Corp. v. Sensormatic Electronics Corp.*, 329 F. Supp. 2d 574 (D. Md. 2004), plaintiff sued for an alleged breach of a franchise agreement.  Well into the litigation, plaintiff sought leave to amend its

9

complaint to include a claim under an addendum to the franchise agreement. The court denied the request as untimely and prejudicial to defendants. Plaintiff, like Boston Gas here, then brought a separate action based on the addendum. The court dismissed the second action on the grounds that it arose from the same transaction and operative facts as the original action, and stated further:

> That the court denied SSC's request, due to its dilatoriness and the harm that would result to Defendants, does not authorize SSC to pursue those denied claims by bringing a second action. *See Sendi v. NCR Comten, Inc.* 624 F.Supp. 1205, 1207 (E.D. Pa. 1986) ("[T]he district count 'must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to amendment of complaints.'") (quoting *Walton v. Eaton Corp.,* 563 F.2d 66, 71 (3d Cir. 1977)). Granting Plaintiff leave to pursue its "Winner Addendum" claims in the new action "would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions." *Myers,* 102 F. Supp. 2d at 1224. Accordingly, count one of SSC's second amended complaint is barred by the rule against claim splitting and, therefore, will be dismissed.

*Id.* at 579-80.

Similarly, in *Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278 (D. Kan. 1988), after the court rejected as untimely their request to amend the complaint to add certain claims and legal theories, plaintiffs filed a new action. The court found that the new suit was barred by the doctrine of "claim splitting," stating:

> The fact that Judge Crow did not allow plaintiffs to proceed on all claims is not a persuasive reason for granting plaintiffs the right to proceed in a second action. To allow such an approach would defeat the purpose of the rule against splitting causes of action: requiring a plaintiff to address all related claims in one action and protecting the defendant from the necessity of litigating similar claims in separate actions.

*Id.* at 282.

The underlying reasoning of this rule also justifies precluding Boston Gas from "claim splitting" in this case. Boston Gas has already taken extensive discovery from Century, deposing nearly every single claims handler, claims personnel or consultant that ever touched the Boston Gas file, *e.g.*, Gregory Kelder, Jens Fog, Alan Benjamini, Angela Baker, Roux Associates, Janet Lockhart, Judith Harnadek and Peter Simmons. Century has also taken multiple depositions of Boston Gas witnesses regarding the claims in the underlying Coverage Action. Obviously, none of these depositions was taken with an eye towards defending a "bad faith" claim. Thus, in defense of the instant action, Century would be required to duplicate much of the discovery it and Boston Gas have already taken, which this Court would have to again oversee. The rule against "claim splitting" is intended to prevent this very type of duplicative discovery and resulting waste of judicial resources.

## **CONCLUSION**

For all of the foregoing reasons, Century respectfully asks the Court to disallow Boston Gas' "end run" attempt around this Court's prior Order by dismissing its Complaint with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 11, 2007 | /s/ David B. Chaffin<br>David Chaffin<br>(BBO #549245)<br>**HARE & CHAFFIN**<br>160 Federal Street, Floor 23<br>Boston, MA 02110-1700<br>(617) 330-5000 |
|  | Of counsel: |
|  | Guy A. Cellucci<br>Patricia B. Santelle<br>Shane R. Heskin<br>**WHITE AND WILLIAMS LLP**<br>1800 One Liberty Place<br>Philadelphia, PA 19103-7395<br>(215) 864-7000 |
|  | **Attorneys for Defendant,<br>Century Indemnity Company** |

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 11, 2007.

/s/David B. Chaffin
David B. Chaffin

12