## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BOSTON GAS COMPANY d/b/a KEYSPAN ENERGY DELIVERY NEW ENGLAND,<br><br>Plaintiff,<br><br>v.<br><br>CENTURY INDEMNITY COMPANY,<br><br>Defendant. | ) Civil Action No:  07-10701RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CENTURY INDEMNITY COMPANY'S SUPPLEMENTAL
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

David B. Chaffin
BBO No. 549245
**WHITE AND WILLIAMS LLP**
100 Summer Street, Suite 2707
Boston, MA  02110
(617) 748-5240

Guy A. Cellucci
Shane R. Heskin
BBO No. 665098
**WHITE AND WILLIAMS LLP**
1650 Market Street
1800 One Liberty Place
Philadelphia, PA  19103-7395
(215) 864-7000

**Attorneys for Century Indemnity Company**

Dated:  March 15, 2010

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ..............................................................3

STANDARD ......................................................................................................................5

ARGUMENT .....................................................................................................................6

A.  The Massachusetts Unfair Business Practices Statute. ..........................................6

B.  Century's Conduct in the Coverage Litigation Cannot Support a Chapter 93A Claim
     In Light of the Opinions by the First Circuit and Supreme Judicial Court.................7

The Everett Appeal ..........................................................................................................8

     1.  Allocation.............................................................................................................8

     2.  Owned Property ...............................................................................................10

     3.  "Expected or Intended" Defense.....................................................................11

     4.  Scope of Declaratory Judgment ......................................................................11

     5.  Accrual of Prejudgment Interest .....................................................................12

     6.  Expert Opinions ...............................................................................................13

     7.  Missing Policies ...............................................................................................13

The Commercial Point Trial ...........................................................................................13

Erroneous Legal Positions .............................................................................................14

C.  Century's Alleged Settlement Conduct Cannot Serve as the Basis of a Chapter 93A
     Claim..........................................................................................................................15

D.  Boston Gas's Conclusory Allegations Based on "Information and Belief" Do Not
     Satisfy the Recently Announced Supreme Court Standard. ...................................18

E.  Boston Gas's Allegations do not Support a Claim for Breach of the Implied Duty of
     Good Faith and Fair Dealing.....................................................................................19

CONCLUSION.................................................................................................................20

Century Indemnity Company ("Century"), respectfully, submits this supplemental memorandum of law in support of its Motion to Dismiss to address an additional basis for dismissal arising since Century filed its motion.

## PRELIMINARY STATEMENT

Boston Gas filed suit in this Court seeking a declaration that Century is required to indemnify it for 100% of all costs incurred and to be incurred for the cleanup of twenty-nine sites allegedly contaminated by the manufactured gas plant ("MGP") operations of Boston Gas (the "Coverage Action").  In filing its claim for declaratory relief, Boston Gas did not assert any extra-contractual (*i.e.*, "bad faith") claims against Century.  Nearly two years after filing the Coverage Action, Boston Gas requested leave to amend the Complaint seeking to add a claim for "bad faith."  Century opposed on the grounds that, among other things, the request was futile, untimely and prejudicial.  The Court agreed with Century and denied leave to amend.

Despite this Court's prior ruling, Boston Gas filed this separate action, which again seeks purported damages for Century's alleged "bad faith" in the course of handling and litigating Boston Gas's coverage claim.  When Century moved to dismiss this action on the basis that Boston Gas was merely recasting the same allegations previously barred by this Court, Boston Gas claimed that the hub of its new action is founded on Century's conduct during the course of litigating the Coverage Action and related settlement negotiations.  Among these purported new grounds, Boston Gas asserts that Century pursued "spurious" defenses, filed "unreasoned and unnecessary post-verdict motions," prolonged the litigation by "having experts change opinions," offered unreasonable "low ball" settlement proposals, and failed to "effectuate prompt, fair and equitable settlement of Boston Gas' claims after [Century's] [sic] liability had become reasonably clear."

To the extent that Boston Gas previously believed that these allegations could have supported a reasonable inference of "commercial extortion" or "immoral, unethical, oppressive, or unscrupulous" conduct, no semblance of a good-faith belief can remain after the decisions by the First Circuit and the Massachusetts Supreme Judicial Court.  The single most overarching allegation of Boston Gas's "bad faith" claim is that Century unreasonably failed "to indemnify Boston Gas for defense costs and all sums that Boston Gas becomes legally obligated to pay as a result of property damage, as long as any part of the damage for which Boston Gas is liable occurred during the policy period."  Flowing from this core premise, Boston Gas thereby asserts that Century needlessly prolonged the litigation and failed to effectuate prompt, fair and equitable settlement of its claim.  The Massachusetts high court has now squarely rejected this fundamental premise, without which, its remaining allegations crumble.

In addition to resting on a faulty premise, the First Circuit has removed from doubt any possible support for its remaining assertions by upholding the very post-verdict motions, coverage defenses, and legal positions that Boston Gas claims were "spurious" and "unreasoned."  Specifically, the First Circuit agreed that (1) Massachusetts law was not clear on allocation and that *Rubenstein* was "cursorily decided"; (2) the "all or nothing" owned property instruction advocated by Boston Gas was erroneous; (3) the judgment on future costs sought by Boston Gas was overly broad; (4) Boston Gas's claim that it is entitled to prejudgment interest from the date it first gave notice of a potential claim was erroneous; (5) albeit harmless, the instruction on Century's "expected or intended" defense did not correctly state Massachusetts law; and (6) the Court's decision to exclude Century's supplemental expert report was "a close call."

In light of these decisions, Century has twice asked Boston Gas to withdraw its Complaint. Boston Gas refuses, retreating back to many of the "old" allegations that this Court previously held were untimely. As demonstrated by Century's opening memorandum, however, Boston Gas cannot circumvent this Court's prior proscription of these claims by filing a wholly separate action many years later. At the same time, it cannot justify filing this separate action based on purported "new" allegations of litigation and settlement misconduct that entirely fly in the face of the decisions by the Massachusetts Supreme Judicial Court and First Circuit. Although normally bound to accept allegations as true, this Court can take judicial notice of these decisions and hold as a matter of law that Century could not have engaged in "commercial extortion or other such similar conduct" by merely maintaining legally correct positions.

This Court may also take judicial notice of these decisions to hold as a matter of law that Century's related settlement positions come nowhere near "immoral, unethical, oppressive, or unscrupulous" conduct. As recognized by the First Circuit, the Coverage Action and resultant settlement negotiations were "plainly, unusually complicated" caused by a split in authority and great uncertainty as to how the Massachusetts Supreme Judicial Court would rule on allocation. Indeed, even after a definitive decision on allocation, Boston Gas admits that uncertainty still remains today and that "liability is far from clear." Thus, as a matter of law, Century cannot have acted in "bad faith" by failing to "effectuate prompt, fair and equitable settlement of Boston Gas' claims." For these reasons, and those previously stated, Boston Gas has no legally supportable basis to assert a bad-faith claim, whether new or old, and its Complaint should be dismissed with prejudice.

## SUPPLEMENTAL STATEMENT OF FACTS

As set forth in detail by Century's Motion to Dismiss, the allegations concerning Century's purported misconduct in the instant "bad-faith" action substantially mirror the

allegations contained in the proposed Third Amended Complaint that was rejected by this Court—over five years ago.  The only substantive difference between the two complaints is that Boston Gas has added allegations concerning Century's conduct during the course of the Coverage Action and related settlement negotiations.

In its Opposition to Century's Motion to Dismiss, Boston Gas attempted to justify these overlapping allegations by claiming that its new Complaint is founded on Century's litigation and settlement conduct during the Coverage Action.  Chief among these allegations are that Century acted in "bad faith" by:

- "[P]ursuing shifting and spurious defenses" (Complaint ¶ 59);

- Filing "unnecessary and unreasoned post-verdict motions" (*Id.* ¶ 61);

- Making "low ball" settlement offers that Century knew would be "inadequate and totally unacceptable" (*Id.* ¶¶ 44-58, 62);

- "[H]aving experts change opinions" in an attempt to unduly delay the litigation (*Id.* ¶ 60); and

- Failing to "effectuate prompt, fair and equitable settlement of Boston Gas' claims after [Century's] [sic] liability had become reasonably clear." (*Id.* ¶ 85).

Needless to say, Boston Gas made these allegations before either of the First Circuit's decisions or the Supreme Judicial Court's decision in the Coverage Action.

This Court heard argument on Century's Motion to Dismiss on July 24, 2007.  While a decision on Century's motion remains pending, on June 10, 2008, the United States Court of Appeals for the First Circuit issued its ruling on Century's appeal from the verdict in the trial of the Everett MGP site.  *See Boston Gas Co. v. Century Indem. Co.*, 529 F.3d 8 (1st Cir. 2008).  The First Circuit sustained several of Century's grounds for appeal.  First, it ruled that the issue of allocation among multiple insurance policies for long-tail liabilities (such as the alleged environmental liabilities at issue in the Coverage Action) was unresolved under Massachusetts

law, and certified the question to the SJC.  *See id.* at 15.  Second, the First Circuit granted a new trial on the issue of what portion of Boston Gas's alleged costs fall within the "owned property" exclusion and are therefore not recoverable.  *See id.* at 17.  Significantly, even where the First Circuit denied a ground for appeal, such as with the exclusion of the supplemental report of Century's expert, Charles Anderson, it characterized the ruling as a "close call."  *Id.* at 18.

With the purported basis of Boston Gas's "bad faith" litigation assertions virtually eliminated by the First Circuit, Century wrote to Boston Gas on July 3, 2008 demanding that Boston Gas withdraw the Complaint or potentially face a motion for sanctions.  *See* Ex. 1; *see also Hochen v. Bobst Group*, 198 F.R.D. 11, 17 (D. Mass. 2000) (imposing sanctions where 93A claim had no good-faith basis and was brought solely to exert settlement pressure); FED. R. CIV. P. 11, Advisory Committee Notes (emphasizing "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable").  Boston Gas responded on July 11, refusing to dismiss the Complaint, but offering instead to stay this action pending a decision by the Massachusetts Supreme Judicial Court on the allocation issue.  *See* Ex. 2.  After the Massachusetts high court squarely rejected Boston Gas's position on allocation, Century once again, on December 8, 2009, asked Boston Gas to withdraw its "bad faith" Complaint.  *See* Ex. 3.  On December 10, Boston Gas again refused, turning its emphasis this time to Century's alleged pre-litigation conduct.  *See* Ex. 4.  But, as demonstrated by Century's initial motion to dismiss, those claims are barred by principles of claim preclusion.

## STANDARD

The Supreme Court has recently clarified the pleading standard necessary to defeat a motion to dismiss.  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim does not have "facial plausibility" unless it contains "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### A.    Chapter 93A

Boston Gas asserts a cause of action under Section 11 of Chapter 93A of the Massachusetts General Laws.  Section 11 provides in pertinent part:

> who suffers any loss of money…as a result of the use or employment by another person who engages in trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two [of this chapter] …may bring an action …for damages….

In turn, Section 2 of Chapter 93A simply provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.*, § 2(a).

To support its claim under Chapter 93A, Boston Gas makes conclusory, boilerplate allegations that Century purportedly committed six of the fourteen different types of unfair claim settlement practices proscribed by Chapter 176D of the Massachusetts General Laws.  As an initial matter, these conclusory statements, which merely parrot the language of the statute, do not meet the pleading standard recently announced by the Supreme Court in *Ashcroft*.  Moreover, the Massachusetts Supreme Judicial Court has unequivocally determined that, unlike individual consumers, sophisticated parties engaged in commercial business (like Boston Gas) do not have standing to bring suit for purported violations of chapter 176D.  *See Polaroid Corp. v. Travelers Indem. Co*, 610 N.E. 2d 912, 917 (Mass. 1993); *see also Kiewit Const. Co. v.  Westchester Fire*

*Ins. Co.*, 878 F. Supp. 298, 301-02 (D. Mass. 1995).  Indeed, proof that a defendant committed

an unfair business practice under Chapter 176D is not a per se violation of Section 2 of Chapter

93A.  *See DeMatteo Constr. Co. v. Century Indem. Co.*, 182 F. Supp. 2d 146, 159-60 (D. Mass.

2001) (rejecting argument that practice found to violate chapter 176D constitutes per se violation

of Section 2 of Chapter 93A) (citing *Polaroid Corp.*, 610 N.E.2d at 917).  *Compare* ch. 93A § 9

*with* ch. 93A § 11 (omitting right to cause of action for violation of 176D to those who "engage[]

in the conduct of trade or commerce").

    A commercial plaintiff, such as Boston Gas, bears a heavy burden under Chapter 93A.

As the First Circuit recently explained:

> [B]etween commercial entities, 'the the objectionable conduct must attain a level
> of rascality that would raise an eyebrow of someone inured to the rough and
> tumble of the world of commerce,' . . . [T]hat is to say, 'the defendant's conduct
> must be not only wrong, but also egregiously wrong.'

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156, 185 (1st Cir.

2009) (citations omitted).  A mere breach of contract or duty cannot constitute an unfair practice

under Chapter 93A "unless it rises to the level of 'commercial extortion' or a similar degree of

culpable conduct."  *Commercial Union Ins. Co. v. Seven Provinces Insurance Co.*, 217 F.3d 33,

43 (1st Cir. 2000).  To trigger liability under Chapter 93A, the defendant has to have engaged in

"immoral, unethical, oppressive, or unscrupulous" conduct.  *See Cambridge Plating Co. v.*

*Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) (quoting *PMP Assocs.*, 321 N.E.2d at 917);

*DeMatteo*, 182 F. Supp. 2d at 162.

>    **B.     Century's Conduct in the Coverage Litigation Cannot Support a Chapter
>            93A Claim In Light of the Opinions by the First Circuit and Supreme
>            Judicial Court.**

    In opposition to Century's Motion to Dismiss, Boston Gas agreed that it could not bring a

separate action based solely on Century's pre-litigation conduct.  It therefore claims that this new

action is founded, in part, on Century's litigation conduct during the Coverage Litigation. Specifically, Boston Gas alleges that Century pursued "shifting and spurious defenses," filed "unnecessary and unreasoned post-verdict motions," and had experts change their opinions to needlessly prolong the litigation.   As demonstrated below, however, substantially all of Century's alleged litigation misconduct was found to be justified either expressly on appeal or by the jury at trial.   This Court may take judicial notice of the decisions by the First Circuit and Massachusetts Supreme Judicial Court, as well as the jury findings at Commercial Point in deciding this motion to dismiss.  *See, e.g.*, *Rodi v. Southern New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) ("[T]he jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice."); *White v. Gittens*, 121 F.3d 803, 805 n.1 (1st Cir. 1997) (taking judicial notice of published state opinion).

### The Everett Appeal

#### 1.   Allocation

The single, most hotly-debated issue in this case has been allocation.  From the inception of this litigation, Boston Gas asserted that Century was jointly-and-severally liable for all of the damage that took place at the sites, regardless if the vast majority of property damage occurred decades before or decades after the policy period.  In contrast, Century argued that it was liable only for covered damages resulting from property damage occurring *during* the Century policy periods.  Both parties had good reason to maintain their respective positions.  On the one hand, Boston Gas's "all sums" theory was supported by the Appeals Court decision in *Rubenstein*.  On the other, Century's position was supported by the "growing plurality" of decisions in favor of pro rata allocation and the failure of the *Rubenstein* court to conduct a thorough analysis.  For these reasons, as well as the specific language of the policies, Century appealed the application of "all sums" and moved for certification.  Boston Gas opposed certification for the third time

arguing that Massachusetts law was clear and that allocation was not outcome determinative.  It further argued that no allocation question existed because the jury made no findings outside of the Century policy period.

The First Circuit rejected each of these contentions.  In doing so, the First Circuit acknowledged that: (1) even though no findings were made on duration, "property damage seemingly occurred over a much longer period than just 1951 through 1969," *Boston Gas*, 529 F.3d at 12; (2) Boston Gas's principal case, *Rubenstein*, was cursorily decided, *see id.* at 13; and (3) the growing plurality of high courts had adopted pro rata allocation over joint-and-several allocation.  *See id.*  The First Circuit further rejected Boston Gas's claim that certification was procedurally improper, holding that "the issue is determinative of the scope of Boston Gas' claim."  In addition, the First Circuit noted that the allocation issue "could easily matter in future cases not involving these parties."

In answering the certified questions presented to it, the SJC agreed with Century "that a pro rata allocation of losses is consistent with, if not compelled by, the most reasonable construction of the policies at issue."  *Boston Gas Co. v. Century Indem. Co.*, 910 N.E.2d 290, 307 (Mass. 2009).  As Century had argued, the SJC agreed that the various provisions of the Century policies must be read together.  Specifically, the SJC reasoned that the "Ultimate Net Loss" provision, read together with the "Policy Period, Territory" provision along with the definition of "occurrence" indicated that the policy "applies only to injury or destruction of property taking place during the policy period."  *Id.*  The SJC thus found: "The most reasonable reading of these provisions is that the Century policies provided coverage for that portion of Boston Gas's liability attributable to the quantum of property damage occurring during a given policy period."  *Id.*

In rejecting Boston Gas's "all sums" argument, the SJC first noted that its focus on the phrase "all sums," places undue emphasis on the phrase "ultimate net loss" and therefore "ignores a fundamental principle of insurance contract interpretation" by overlooking the limitation that the phrase "during the policy period" places on the scope of coverage. *Id.* at 308. The SJC similarly rejected Boston Gas's assertion that other provisions, including the "other insurance" clause, and the "continuous or repeated exposure to substantially the same general conditions" language, was intended to expand coverage for damages occurring outside the policy period. *See id.* at 308-09.

Finding the Century policies to be unambiguous, the SJC noted that an objectively reasonable insured would not expect coverage for liability occurring outside the policy period. As the SJC explained, "[n]o reasonable policyholder could have expected that a single one-year policy would cover all losses caused by toxic industrial wastes released into the environment over the course of several decades." *Id.* at 309. Finally, the SJC found support for pro rata allocation on public policy grounds, explaining that the pro rata allocation method "promotes judicial efficiency, engenders stability and predictability in the insurance market, provides incentives for responsible commercial behavior, and produces an equitable result." *Id.* at 311.

### 2.     Owned Property

Century was also justified in pursuing its owned property defense both at trial and on appeal. Boston Gas contended at trial that so long as it incurred one dollar to remediate offsite property damage, it was entitled to recover "all sums." Boston Gas further argued that the owned-property exclusion did not apply if the cleanup had the effect, even if unintended, of remediating groundwater. *See* Everett Trial, Closing Statements, tr. at 28 ("Whatever the design was, it's the effect of what was done that matters. If the effect was to protect groundwater or off-site property, the owned-property exclusion doesn't apply."), attached as Ex. 5   Century

disagreed arguing instead that coverage is only permitted for remediation of an insured's owned property where "'the [on-site] cleanup is designed to remediate, to prevent or to abate further migration of contaminants to the off-site property.'"  *Id.* at 20 (quoting *Hakim v. Massachusetts Insurers' Insolvency Fund*, 675 N.E.2d 1161, 1164 & n.8 (Mass. 1997)) , attached as Ex. 5.  The First Circuit agreed with Century explaining:

> The fact that the jury verdict included the disputed costs shows only that the jury believed that *some* costs targeted pollution that damaged or threatened off-site property.  So we must remand for a new trial on this issue.  This is a relatively narrow issue, but the amounts are not trivial.  In all events, the principle is clear: only that remediation necessary to protect against off-site contamination is compensable; further costs, however useful to mitigate on-site contamination, are not.  *Boston Gas*, 529 F.3d at 17.

### 3.      "Expected or Intended" Defense

Although ultimately deemed harmless error, Century's interpretation of Massachusetts law on the "expected or intended" defense was correct.  Specifically, Century argued that the instruction and question prevented the jury from considering intentional damage *prior* to the Century policy period.  The special verdict form asked:  "Did Boston Gas Company intentionally cause or know to a substantial certainty that it was causing contamination of soil and groundwater at the Everett site *in one or more policy years*?"  The First Circuit agreed noting that, "[t]aken literally and in isolation, the underscored language might be understood as Century contends and might well misstate Massachusetts law."  *Id.* at 19.  Nevertheless, the First Circuit affirmed the verdict, reasoning that the jury charge as a whole "tended to convey the correct message and also because common sense tends to reject the notion that an earlier intention or expectation would not count."  *Id.*  Therefore, the chance of prejudice was limited.

### 4.      Scope of Declaratory Judgment

Century also could not have acted in "bad faith" by contesting Boston Gas's request for a declaration on future costs requiring Century to indemnify Boston Gas for "all costs that Boston

Gas has incurred, and will incur, for investigation and cleanup at and around the Everett site."
*Id.* at 25.   On appeal, Century contended that this requested declaratory relief was overbroad, because, among other things, it potentially applies to damage from MGP operations at the Everett site that was not specifically litigated at trial.   More particularly, the broad relief ignores that the Century policies may not cover certain future damage, and the issue of coverage for future damage was not actually litigated at the Everett trial.   The First Circuit again agreed with Century, holding that the declaratory judgment was overbroad, and remanded for modification:

> By its literal terms the declaratory judgment could be read to encompass costs that are not recoverable under Century's policy; the district court may not have considered that requiring Century to indemnify Boston Gas for all costs related to "investigation and cleanup" may apply more broadly than it intended.   On remand an adjustment is needed in order to clarify that Boston Gas' entitlement extends only to costs incurred for remediation not barred by the terms of Century's policies and consistent with the findings of the jury.   *Id.* at 26.

### 5.      Accrual of Prejudgment Interest

Century properly contested Boston Gas's assertion that prejudgment interest should be calculated from the date Boston Gas first provided notice of a "potential" claim on August 4, 1995.   Under the Massachusetts statute, Boston Gas would only entitled to prejudgment interest from the date of "breach or demand."   MASS. GEN. LAWS ch. 231 § 6C.   As the First Circuit recognized, Boston Gas presented no evidence that there was a "breach of demand" before it initiated suit against Century on October 22, 2002.   Significantly, the Court of Appeals noted that, rather than disclaiming coverage, Century reserved its rights, and, thereafter, Boston Gas never requested specific payment.   Boston Gas therefore failed to establish the date of breach, and accordingly "Boston Gas is entitled to statutory interest only from the date of filing suit (or later, for those expenses that post-dated the filing)."   *Boston Gas*, 529 F.3d at 30.

### 6.     Expert Opinions

In support of its "bad-faith" claim, Boston Gas asserts that Century had its experts change opinions for the sole purpose of unduly prolonging this litigation.  Again, the First Circuit found just the opposite, expressly recognizing that Century's decision to supplemental these opinions had justification and that the Court's decision to exclude the opinions "was a close call."  *Id.* at 21.  The First Circuit added that Century had "some basis for contesting Boston Gas' description of the reports as reflecting a 'sea change,' and Boston Gas could have asked to depose Anderson on his new adjustments."  *Id.*  Nevertheless, the First Circuit elected not to question this Court's broad discretion in admitting documents and testimony into evidence.

### 7.     Missing Policies

Although the First Circuit held that the jury's verdict on the missing policies could have been supported by the evidence, Century certainly cannot have acted in "bad faith" by reasonably contesting Boston Gas's claims on the limits, which were wholly inconsistent with its own Complaint and 30(b)(6) admissions.  Specifically, in its Complaint and discovery responses, Boston Gas claimed that the limits of the missing policies were no more than $325,000 between 1951 and 1958.  Then, on the first day of trial, without a scintilla of new evidence, Boston Gas represented to the jury that those same limits were now $1,000,000.  As a matter of law, as well as fundamental fairness, Century could not have acted in "bad faith" in light of Boston Gas's own "shifting" theories of coverage.

### __The Commercial Point Trial__

The Commercial Point site was tried to a jury in March 2007.  The jury returned a verdict in Century's favor on one of its most significant coverage defenses—owned property.  In addition to this established defense, a new trial may be required if Boston Gas continues its refusal to honor the pro rata, time-on-the risk method announced by the SJC.  Specifically,

-13-

Century would be entitled to a new trial on property damage to conduct the very "fact-based" apportionment of damages that Boston Gas claims the jury did, but was never asked to do. Indeed, for this very reason, Century objected to the instruction on property damage, and specifically asked to have the jury make findings on the timing and extent of property damage for each portion of the site. This request was significant because, among other things, Boston Gas's own onsite environmental consultant concluded that the sediment damage resulted during MGP operations, which ceased in the 1930s. Accordingly, Century has a strong position that all damages for the sediment remediation are excluded. Despite this substantial defense, Boston Gas continues to reject the pro rata allocation method announced by the SJC by pressing its fictional jury verdict theory.

### Erroneous Legal Positions

Although Century was substantially correct on the majority of its legal positions, it admittedly was not found to be correct on *every* position. But the mere fact that Century failed to accurately predict the law or failed to interpret the facts on *every* position in this unusually complex litigation, does not give rise to a claim of "bad faith." Rather, it is well settled that an insurer who takes a reasonable position, even if that position is later determined to be erroneous, has not violated Chapter 93A or Chapter 176D or otherwise acted in "bad faith." For example, in *Guity v. Commerce Ins. Co.*, 631 N.E.2d 75 (Mass. App. Ct. 1994), the court stated that a "plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply … unsuccessful—is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." *Id*. at 77. The First Circuit has also endorsed this view. *See, e.g.*, *Pediatricians, Inc. v. Provident Life & Acc. Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir. 1992) ("Liability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous");

*Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 835 (1st Cir. 1990) ("An insurer is not held to standards of omniscience or perfection; it has leeway to use and should consistently employ its honest business judgment.").

Given the enormous complexity of this case and the many legal errors by Boston Gas itself, Century's legal and factual positions, taken as a whole, cannot remotely constitute "immoral, unethical, oppressive, or unscrupulous" conduct as a matter of law.  *See* First Circuit Judgment, dated Nov. 18, 2009 ("This litigation, plainly unusually complicated, has been well-handled in the district court, which used its best judgment in the face of a division of authority in the state courts and great uncertainty as to what the SJC itself might ultimately decide."). Accordingly, Century respectfully asks this Court to take judicial notice of the decisions by the First Circuit and SJC, and hold that Boston Gas's allegations of "bad faith" litigation conduct fail to state a claim for which relief can be granted.

### C.  Century's Alleged Settlement Conduct Cannot Serve as the Basis of a Chapter 93A Claim.

In addition to alleged litigation misconduct in the Coverage Action, Boston Gas asserts that this separate action is justified because Century presented unreasonable "low ball" settlement offers, and failed to "effectuate prompt, fair and equitable settlement of Boston Gas' claims" after liability was reasonably clear.  These assertions fail as a matter of law for numerous reasons.

First, Boston Gas merely parrots the language of 176D, which does not apply to sophisticated commercial litigants like Boston Gas, and does not meet the pleading standard articulated by the Supreme Court in *Ashcroft*.

Second, even if 176D did apply (which it does not), Boston Gas erroneously claims that it is the liability of Boston Gas that must be clear for Century's settlement obligation to begin.  On

the contrary, the alleged failure to effectuate a prompt, fair and equitable settlement can only constitute an unfair practice if plaintiff can first show that the *insurer's* liability has become "reasonably clear" under the policy at issue.  *See, e.g.*, *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 169 F.3d 43, 56 (1st Cir. 1999) (rejecting claim under Section 3(9)(f) because insured failed to show that insurer's "liability under the policy was 'reasonably clear'"); *Van Dyke v. St. Paul Fire & Marine Ins. Co.,* 448 N.E.2d 357, 361-62 (Mass. 1983) (same).  Here, by Boston Gas's own admission, "liability is far from clear" given the numerous issues left open on remand.  *See* Boston Gas Letter, dated Dec. 10, 2009 (Ex. 4).  Moreover, this Court can take judicial notice of the First Circuit's own observation that this litigation is "plainly, unusually complicated" and that there was "a division of authority in the state courts and great uncertainty as to what the SJC itself might ultimately decide" on the "critical legal issue" in this case.  *See* First Circuit Judgment, dated Nov. 18, 2009, at 5.

Third, Century's initial offer of $750,000 cannot be held to constitute "commercial extortion or other such similar conduct" in the face of this uncertainty on allocation.  Nor can it be held to amount to "immoral, unethical, oppressive, or unscrupulous" conduct given Century's then unresolved absolute defenses with respect to known loss, expected or intended, late notice and its still existing substantial defense on owned property.  It must also be viewed through the lens of sophisticated commercial entities where it is not unusual to see incremental movement in response to what is viewed by the other side as a wildly overblown demand.  This opening offer also cannot be held to constitute "bad faith" even if Boston Gas had recovered substantially more than its final judgment.  *See, e.g.*, *Westfield Realty Trust v. Continental Cas. Co.*, 1995 WL 1146176, at *6 (Mass. Super. Ct. Dec. 19, 1995) (holding that insured failed to prove claim under § 11 where, although insurer's settlement offers were substantially less than amount

insured ultimately recovered, that alone did not prove bad faith where difference in parties' views on valuation were attributable to "an honest, good faith difference of opinion as to the proper approach to the valuation"); *see also Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 829 F.2d 227, 247 (1st Cir. 1987) (holding insurer was not in bad faith for contesting claims where coverage issues were unresolved and complex).

This Court may further take judicial notice that this initial offer was not unreasonable given the admission on record that Boston Gas, did in fact, accept $650,000 in settlement from London for not just the sites at issue here, but for a complete "buy back" of the policies. *See* London's Motion for Summary Judgment (Docket #485); *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993) (holding that on Rule 12(b)(6) motion, Court may also look to documents the authenticity of which are not disputed by the parties, to documents central to the plaintiffs' claims, and to documents referenced in the complaint). Notably, London insured Boston Gas for twenty-eight years, and issued over four times the amount of limits as Century, at the same coverage layer, as well as in excess of Century. *See* Boston Gas's Supplemental Response to London Market Insurers' First Set of Interrogatories, attached as Ex. 6. Further, Century's subsequent offer of $4.2 million after many of its absolute coverage defenses were resolved, clearly cannot be held to be in "bad faith" in the face of the allocation uncertainty then existing.

Finally, by Boston Gas's own admission at the last status conference, Boston Gas has not incurred any damages at a vast majority of the other twenty-seven sites for which it claims Century has acted in "bad faith." It therefore cannot use these other sites, in which damages are speculative, at best, to assert that Century's global settlement offer was unreasonably low. *Compare* Complaint at ¶ 22 ("Boston Gas has incurred substantial remediation at 29 sites…")

*with* Boston Gas Responses to 30(b)(6) Deposition (admitting that it has incurred no costs at a majority of the sites).

> **D.      Boston Gas's Conclusory Allegations Based on "Information and Belief" Do Not Satisfy the Recently Announced Supreme Court Standard.**

Based solely on information and belief, Boston Gas makes a series of conclusory allegations asserting, among other things, that Century has "a pattern and practice of forcing policyholders with complex insurance claims" to engage in costly and time consuming litigation without regard to its contractual obligations.  Complaint ¶¶ 12, 72; *see also id.* ¶¶ 73-76, 78-80. These wholly unsupported and purely speculative allegations are precisely the type of conclusory allegations that the Supreme Court found unsatisfactory in *Ashcroft.  See Ashcroft*, 129 S. Ct. at 1949. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) ("The standard on a motion to dismiss is deferential, but a court need not sheer its moorings to common sense, particularly when highly inventive assertions are pled on information and belief. Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"); *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (explaining that court need not accept complaint's "bald assertions" or "unsupportable conclusions").

In addition to being based on sheer speculation, these allegations are utterly devoid of any "factual content that allows the court to draw the reasonable inference" of the misconduct alleged.  Among other things, Boston Gas fails to identify even a single specific instance in which Century has purportedly engaged in this alleged sensational conduct.  It further fails to identify the who, what and when of this alleged conduct without which the Court cannot even

begin to assess whether a reasonable inference can be drawn to establish that the conduct rises to the level of "commercial extortion" or "immoral, unethical, oppressive, or unscrupulous" conduct. Given the complete absence of any specificity whatsoever, this Court should not permit this potentially "massive factual controversy" to proceed on nothing more than hope and belief. *See Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528, n. 17 (1983) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

### E.  Boston Gas's Allegations do not Support a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing.

In the first count of the Complaint, Boston Gas alleges that Century breached a duty of good faith and fair dealing. But the count is silent with respect to the source of the duty. Century assumes, because there is no inchoate duty of good faith and fair dealing, that what Boston Gas meant to allege is a claim for breach of the implied covenant of good faith and fair dealing. This claim will not lie, for all of the reasons stated above.

The implied covenant of good faith and fair dealing forbids a party to a contract from doing anything that will have "the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471, 583 N.E.2d 806 (1991). However, where—as here—the claim boils down in essence to an allegation of breach of contract, recovery under the implied covenant "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (citation omitted). For the reasons discussed above, Boston Gas cannot allege, and could never prove, that Century acted in bad faith to deprive Boston Gas of any contractual rights or engaged in any leveraging of any sort.

*Id.* at 228 ("Courts should not view the covenant as 'an unwarranted invitation . . . to impermissibly intrude into freedom of contract'") (citation omitted).  As two experts in the field have explained, "[e]xcept in extraordinary circumstances, events occurring after an insurer's disclaimer of coverage and, in particular, occurring in the prosecution or defense of a coverage action, do not support an independent claim for bad faith refusal to defend.  Underlying the immunity of litigation conduct from a bad faith claim is a more fundamental principle: it is not actionable bad faith to pursue a coverage declination in litigation."  BARRY R. OSTRAGER AND THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES, § 12.14 (12th ed. 2004) (citing *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 829 F.2d 227, 247 (1st Cir. 1987) (holding insurer was not in bad faith for contesting claims where coverage issues were unresolved and complex)).

## CONCLUSION

For all of the foregoing reasons, and those previously stated, Century respectfully asks the Court to dismiss Boston Gas's separate "bad faith" Complaint with prejudice.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

Dated:  March 15, 2010

/s/ David B. Chaffin
David B. Chaffin
BBO No. 549245
100 Summer Street, Suite 2707
Boston, MA  02110
(617) 748-5240

Guy A. Cellucci
Shane R. Heskin
BBO No. 665098
1800 One Liberty Place
Philadelphia, PA  19103-7395
(215) 864-7000

**Attorneys for Century Indemnity Company**

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on March 15, 2010.


/s/ David B. Chaffin
David B. Chaffin